FROM :UNION PLANTERS VAULT        618 239 4999         1998,08-17    16:29    #993 P.27

Union Planters Bank
PO Box 11357
St. Louis MO 63105-0157

BK 3231 PG 799    A01420603

STATE OF ILLINOIS
ST. CLAIR COUNTY

98 MAR 11 AM 10:26

94018

BK 3231 PG 799

_____Space Above This Line For Recording Data_____

## REAL ESTATE DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is MARCH 2, 1998 and the parties, their addresses and tax identification numbers, if required, are as follows:

   GRANTOR:   KURRIN & RICHARDS, INC.
              A MISSOURI CORPORATION
              225 S. JACKSON STREET
              BELLEVILLE, IL  62220
              TAXPAYER I.D. #:  43-1242926

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

   TRUSTEE:   DAVID A. DOERING
              8182 MARYLAND AVENUE
              ST. LOUIS, MO  63105

   LENDER:    UNION PLANTERS BANK, NATIONAL ASSOCIATION
              ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA
              8182 MARYLAND AVE.
              ST. LOUIS, MO  63105
              TAXPAYER I.D. #:  62-0059006

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, sells and conveys to Trustee, in trust for the benefit of Lender, with power of sale, the following described property: LOT NO. 15 OF "ABEND'S 1ST ADDITION TO THE TOWN (NOW CITY) OF BELLEVILLE; REFERENCE BEING HAD TO THE PLAT THEREOF RECORDED IN THE RECORDER'S OFFICE OF ST. CLAIR COUNTY, ILLINOIS, IN BOOK OF DEEDS "T" ON PAGE 195.

   SITUATED IN ST. CLAIR COUNTY, ILLINOIS
   08-27-0-105-034

   The property is located in ST. CLAIR ................................... at .......................................
                                 (County)
   225 S. JACKSON STREET ............., BELLEVILLE ..............., IL ..., 62220 .............
                 (Address)                         (City)                            (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 200,000.00 ....................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. (When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)
   NOTE DATED AUGUST 11, 1994 TO KURRIN & RICHARDS, INC. FOR $100,000.00 AND NOTE DATED MARCH 2, 1998 TO KURRIN & RICHARDS, INC. FOR $100,000.00.

   ☒ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
   ☐ Construction Loan. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

   MISSOURI - AGRICULTURAL/COMMERCIAL DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)     (page 1 of 8)
   © 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form AG/CO-DT-MO 11/17/95



confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

FROM :UNION PLANTERS VAULT     618 235 4589     1999.08-17   16:29   #990 P.08

BOOK 3231 PAGE 800

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
    A. A beneficial interest in Grantor is sold or transferred.
    B. There is a change in either the identity or number of members of a partnership or similar entity.
    C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:
    A. Grantor is duly organized and validly existing in the Grantor's state of incorporation or organization. Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
    B. The execution, delivery and performance of this Security Instrument by Grantor and the obligation evidenced by the Secured Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than previously disclosed in writing to Lender, Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor shall not partition or subdivide the Property without Lender's prior written consent.
Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for

(page 2 of 6)

© 1994 Bankers Systems, Inc., St. Cloud, MN    Form AG/CO-DT-MO   11/17/98

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

FROM :UNION PLANTERS VAULT        618 239 4989        1999.08-17    16:31    #990 P.09

BOOK 3231 PAGE 801

the Inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

14. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of the Lender, as additional security all the right, title and interest in and to any and all:
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases").
   B. Rents, issues and profits (all referred to as "Rents"), including but not limited to security deposits, minimum rent, percentage rent, additional rent, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

In the event any item listed as Leases or Rents is determined to be personal property, this Security Instrument will also be regarded as a security agreement.

Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Except for one lease period's rent, Grantor will not collect in advance any future Rents without Lender's prior written consent. Upon default, Grantor will receive Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. Amounts collected shall be applied at Lender's discretion to payments on the Secured Debt as therein provided, to costs of managing, protecting and preserving the Property and to any other necessary related expenses including Lender's attorneys' fees and court costs. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on Grantor's default when Lender or Trustee takes an affirmative action as prescribed by the law of the state where the Property is located. This assignment will remain effective during any period of redemption by the Grantor until the Secured Debt is satisfied. Unless otherwise provided by state law, Grantor agrees that Lender or Trustee may take actual possession of the Property without commencing any legal action or proceeding. Actual possession of the Property is deemed to occur when Lender notifies Grantor of Grantor's default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. Thereafter, either Lender or Grantor may notify the tenants and demand that all future Rents be paid directly to Lender. On receiving the notice of default, Grantor will endorse and deliver to Lender any payments of Rents. If Grantor becomes subject to a voluntary or involuntary bankruptcy, Grantor agrees that Lender and Trustee are entitled to receive relief from the automatic stay in bankruptcy for the purpose of making this assignment effective and enforceable under state and federal law.

Grantor warrants that no default exists under the Leases or any applicable landlord law. Grantor also agrees to maintain, and to require the tenants to comply with, the Leases and any applicable law. Grantor will promptly notify Lender of any noncompliance. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender or Trustee may opt to enforce compliance. Grantor will obtain Lender's written authorization before Grantor consents to sublet, modify, cancel, or otherwise alter the Leases, to accept the surrender of the Property covered by such Leases (unless the Leases so require), or to assign, compromise or encumber the Leases or any future Rents. If Lender acts to manage, protect and preserve the Property, Lender does not assume or become liable for its maintenance, depreciation, or other losses or damages, except those due to Lender's gross negligence or intentional torts. Otherwise, Grantor will hold Lender harmless and indemnify Lender for any and all liability, loss or damage that Lender may incur as a consequence of the assignment under this section.

15. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Grantor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any other person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this

(page 3 of 6)

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form AG/CO-DTMD 11/17/95

confidential
Matt Murrell
Baker Donelson

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

FROM :UNION PLANTERS VAULT          618 239 4999          1999,06-17   16:32   #990 P.10

BOOK 3231 PAGE 802

Security Instrument and any related documents, including without limitation, the power to sell the Property.
If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sums in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.
   D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
   E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.
   F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.
   G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.
   H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.
   I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.
   J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.
   K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

(page 4 of 6)

© 1996 Bankers Systems, Inc., St. Cloud, MN    17-21411 Form AGCO-OTMO 11/17/98

confidential
Matt Murrell
Baker Donelson

FROM UNION PLANTERS VAULT    618 239 4989    1999.09-17  16:33   #958 P.11

вноr 3231 исг 803

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Grantor agrees to maintain insurance as follows:
    A. Grantor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.
    All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.
    Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payments. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.
    B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.
    C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by Mo. Rev. Stats. Stat. § 443.055 and the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

26. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time present an affidavit, stating the facts, to the circuit court of the county where the Property is located. The court may then appoint a successor trustee. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

27. **LEASE OF THE PROPERTY.** Trustee hereby leases the Property to Grantor until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Grantor, and every person claiming an interest in or possessing the property or any part of it, shall pay rent during the term of the lease for one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

28. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

29. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

(page 5 of 6)

© 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form AGCO-DT-MO 11/17/94

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

FROM :UNION PLANTERS VAULT        618 239 4989        1999,00-17   16:34   #990 P.12

BOOK 3231 PAGE 604

Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (Grantor) and us (Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Entity Name: KURRIN & RICHARDS, INC.
A MISSOURI CORPORATION
BY: (Signature) LEO TIGUE, PRESIDENT   (Date)

Entity Name: ............
(Signature) ............ (Date)

(Signature) ............ (Date)
(Signature) ............ (Date)

(Trustee's Signature - Only required in the City of St. Louis)   (Date)
(Lender's Signature - Only required in the City of St. Louis)   (Date)

**ACKNOWLEDGMENT:**
STATE OF Illinois, COUNTY OF St. Clair } ss.
On this 6th day of March, before me appeared LEO TIGUE, PRESIDENT
to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that HE executed the same as HIS free act and deed.
☐ to me personally known, who, being by me duly sworn did say that s/he is the President
of Kurrin & Richards, Inc.
and that the seal affixed to foregoing instrument is the corporate seal of said corporation or association, and that said instrument was signed and sealed in behalf of said corporation or association by authority of its board of directors or trustees, and said Board acknowledged said instrument to be the free act and deed of said corporation or association.
☐ to me personally known, who, being by me duly sworn did say that s/he is the President
of Kurrin & Richards, Inc.
and that said instrument was signed and sealed in behalf of said corporation or association by authority of its board of directors or trustees, and said Board acknowledged said instrument to be the free act and deed of said corporation or association and that said corporation or association has no corporate seal.
My commission expires:

OFFICIAL SEAL
MICHELLE A DOCKINS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/01/00

Michelle A. Dockins
(Notary Public)

STATE OF .............., OF .............. } ss.
On this .... day of ...., before me appeared ....
[remaining acknowledgment blocks left blank]

confidential
Matt Murrell
Baker Donelson

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58  A02162179

A02162179
MICHAEL T. COSTELLO
RECORDER OF DEEDS
BELLEVILLE, IL
RECORDED ON
05/28/2009   07:50:00AM
RHSP FEE:      10.00
TOTAL FEE:    $42.00
PAGES:   3

**RECORDATION REQUESTED BY:**
REGIONS BANK
PO BOX 2224
BIRMINGHAM, AL 35246

**WHEN RECORDED MAIL TO:**
REGIONS BANK
PO BOX 2224
BIRMINGHAM, AL 35246

**SEND TAX NOTICES TO:**
REGIONS BANK
PO BOX 2224
BIRMINGHAM, AL 35246

State Imposed Surcharge
Rental Housing surcharge: $10.00

FOR RECORDER'S USE ONLY

 **REGIONS**

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST dated March 20, 2009, is made and executed between KURRIN & RICHARDS, INC.,, whose address is 225 S JACKSON ST, BELLEVILLE, IL 62220 ("Grantor") and REGIONS BANK, whose address is PO BOX 2224, BIRMINGHAM, AL 35246 ("Lender").

**DEED OF TRUST.** Lender and Grantor have entered into a Deed of Trust dated March 2, 1998 (the "Deed of Trust") which has been recorded in ST CLAIR County, State of Illinois, as follows:

In regard to that certain promissory note dated 03-02-1998, in the original principal sum of $200,000.00, and to secure the payment of the Original Note, Grantor made, executed and delivered that certain Deed of Trust or Mortgage of even date therewith and in the same principal sum as the Original Note, which deed of trust or mortgage is recorded in Book or Instrument number 3231, at Page 799 of the public records of ST. CLAIR County, ILLINOIS.

**REAL PROPERTY DESCRIPTION.** The Deed of Trust covers the following described real property located in ST CLAIR County, State of Illinois:

SEE ATTACHED EXHIBIT 'A'   A 0142 0603

The Real Property or its address is commonly known as 225 S JACKSON STREET, BELLEVILLE, IL 62220. The Real Property tax identification number is 08-27-0-105-034.

**MODIFICATION.** Lender and Grantor hereby modify the Deed of Trust as follows:

**EXTEND MATURITY DATE:** Whereas the Note has a present principal balance of $159,806.66, and the Borrower is the obligor under the Note and the Grantor is the grantor under the Deed of Trust or Mortgage, and Regions Bank is the owner and the holder of the Note and Deed of Trust or Mortgage; and whereas the Borrower and the Grantor have requested to extend the maturity date of the Deed of Trust or Mortgage. The present principal balance of the Note is as stated above and with the new maturity date of the Renewal Note is 03/09/2014.

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED MARCH 20, 2009.

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

## MODIFICATION OF DEED OF TRUST
Loan No: 37880553000000030001     (Continued)     Page 2

**GRANTOR:**

KURRIN & RICHARDS, INC.,

By: _[signature]_
LEO TIGUE JR

By: _Veronica J. Tigue Secretary_
VERINOCA J TIGUE

**LENDER:**

REGIONS BANK

X _[signature]_
Authorized Officer

### CORPORATE ACKNOWLEDGMENT

STATE OF __Missouri__ )
                      ) SS
County OF __St Louis__ )

On this __20__ day of __March__, 20__09__, before me appeared LEO TIGUE JR and VERINOCA J TIGUE, to me personally known, who, being by me duly sworn, did say that they are _____ of KURRIN & RICHARDS, INC., and __Veronica J. Tigue__ _____ of KURRIN & RICHARDS, INC., respectively, and that on behalf of said corporation, by authority of its board of directors, said LEO TIGUE JR and VERINOCA J TIGUE acknowledged said Modification to be the free act and deed of said corporation.

Notary Public _[signature: Marilyn T. Mazzoni]_

My Commission expires:

MARILYN T. MAZZONI
Notary Public - Notary Seal
State of Missouri
St. Louis County
My Commission Expires 02-13-2013
Commission # 09406668

### LENDER ACKNOWLEDGMENT

STATE OF __Missouri__ )
                      ) SS
County OF __St Louis__ )

On this __20__ day of __March__, 20__09__, before me appeared __Andrew Bryan__, to me personally known, who, being by me duly sworn did say that he or she is the __AVP__ _____ of REGIONS BANK, and that said corporation has no corporate seal, and that said Modification was signed on behalf of such corporation by authority of its board of directors, and said __AVP__ acknowledged said Modification to be the free act and deed of said corporation.

Notary Public _[signature: Marilyn T. Mazzoni]_

My Commission expires:

MARILYN T. MAZZONI
Notary Public - Notary Seal
State of Missouri
St. Louis County
My Commission Expires 02-13-2013
Commission # 09406668

LASER PRO Lending, Ver. 5.41.20.301  Copr. Harland Financial Solutions, Inc. 1997, 2009.  All Rights Reserved.  - MO/AL K:\CFI\LPL\G202.FC TR-281717 PR-CM07

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

# Exhibit "A"

THE FOLLOWING DESCRIBED:

LOT NO. 15 OF "ABEND'S 1ST ADDITION TO THE TOWN (NOW CITY) OF BELLEVILLE"; REFERENCE BEING HAD TO THE PLAT THEREOF RECORDED IN THE RECORDER'S OFFICE OF ST. CLAIR COUNTY, ILLINOIS, IN BOOK OF DEEDS "T" ON PAGE 195.

SITUATED IN THE COUNTY OF ST. CLAIR AND STATE OF ILLINOIS.

BEING THE SAME PROPERTY CONVEYED TO KURRIN & RICHARDS, INC. BY DEED FROM FRANCES E. SANDEFUR, A DIVORCED PERSON RECORDED 11/20/1985 IN DEED BOOK 2620 PAGE 521, IN THE OFFICE OF THE RECORDER OF DEEDS FOR ST. CLAIR, ILLINOIS.

TAX ID# 08-27-0-105-034 ✓

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

confidential
Matt Murrell
Baker Donelson
Nov 16, 2016 16:58

INDEXED